James X. Bormes (*pro hac vice*)
Catherine P. Sons (*pro hac vice*)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan (*pro hac vice*)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peggy Quintana, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HealthPlanOne, LLC,<br><br>Defendant. | No.: 2:18-cv-02169-RM<br><br>**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM FOR APPROVAL OF THE PARTIES' FLSA COLLECTIVE ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I. Introduction ................................................................................................... 2

II. Procedural and Factual History .................................................................... 3

    A. The Litigation ...................................................................................... 3

    B. Collective Action Certification for Settlement Purposes Only .......... 3

III. Summary of Settlement Terms ..................................................................... 4

    A. Gross Settlement Amount .................................................................. 4

    B. Net Settlement Amount ...................................................................... 4

    C. Formula for Distribution to Participating Collective Members ......... 5

    D. Released Claims ................................................................................. 5

    E. Service Award .................................................................................... 6

    F. Settlement Administration.................................................................. 7

    G. Attorney Fees and Costs..................................................................... 8

IV. Legal Standard.............................................................................................. 8

V. The Settlement is a Reasonable Compromise of Disputes Issues ................ 9

    A. Bona Fide Dispute .............................................................................. 9

    B. The Settlement is a Fair and Reasonable Resolution ...................... 10

        i. The Strength of the Plaintiff's Case ....................................... 10

        ii. The Risk, Expense, Complexity, and Likely
            Duration of Further Litigation................................................ 11

        iii. The Amount Offered in Settlement ...................................... 12

        iv. The Stage of the Proceedings................................................. 13

        v. The Experience and Views of Counsel ................................. 13

        vi. There is No Fraud or Collusion Behind the Settlement ......... 14

VI. Conclusion.................................................................................................. 15

# TABLE OF AUTHORITIES

Page

### CASES

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
   450 U.S. 728, 740 (1981) .................................................................................................. 7

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245, 255 (N.D. Cal. 2015) ..................................................................... 9, 11

*Custom LED, LLC v. eBay, Inc.*,
   No. 12-cv-350, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ......................... 12

*Fontes v. Drywood Plus, Inc.*, Case No. 12-cv-1901-PHX-LOA,
   2013 WL 6228652 (D. Az. Dec. 2, 2013) (unreported case) ......................................... 7

*Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068, 2007 WL 221862,
   at *4 (N.D. Cal. Jan. 26, 2007), aff'd 331 Fed.Appx. 452 (9th Cir. 2009) .................... 12

*Jones v. Agilysys, Inc.*,
   No. C-12-03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014) ..................... 7

*Jones v. Agilysys, Inc.*,
   2014 WL 2090034 (N.D. Cal. May 19, 2014) .............................................................. 12

*Khanna v. Inter-Con Sec. Sys., Inc.*,
   No. 09-cv-2214, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013) ........................... 7

*Khanna v. Intercon Se. Sys., Inc.*,
   No. 2:09-cv-2214, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014) ...................... 8, 9

*Knight v. Red Door Salons, Inc.*
   2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) ............................................................ 12

*Larsen V. Trader Joe's Co.*,
   No. 11-cv-05188, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014) ............................ 13

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350, 1352-53 (11th Cir. 1982) ...................................................................... 7

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
   No. 10-cv-5243, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) ........................... 8

*Nichols v. Smithkline Beecham Corp.*,
   No. 006222, 2005 WL 950616, at *16 (E.D. pa. April 22, 2005) ................................ 12

*Officers for Justice v. Cicl Serv. Comm.*,
   688 F.2d 615, 625 (9th Cir. 1982) ................................................................................ 10

*Selk v. Pioneers Mem'l Healthcare Dist.*,
   159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) .............................................................. 7, 8

*Wagner v. County of Inyo*,
   No. 1:17-cv-00969, 2018 WL 5099761 (E.D. Cal. Oct. 18, 2018) .............................. 7, 8

*Yue Zhou v. Wang's Restaurant*,
   No. 05-cv-0279, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007) ....................... 7

**STATUTES**

29 U.S.C. § 216(b) ................................................................................................................. 4

29 U.S.C. § 255(a) ................................................................................................................. 9

29 U.S.C. § 260 ..................................................................................................................... 9

# MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Peggy Quintana ("Plaintiff") submits this Motion on the grounds that Plaintiff and Defendant HealthPlanOne, LLC ("Defendant") desire to completely resolve all issues, claims, and disputes related to this lawsuit. As further explained in the following Memorandum of Points and Authorities, the Parties successfully mediated the claims in this lawsuit and entered into a written settlement agreement. Plaintiff accordingly moves this Court for an order granting:

(1) Approval of a proposed settlement agreement on behalf of Plaintiff and a collective consisting of all telephone-dedicated workers Defendant employed in call centers in Arizona, Florida, Connecticut and Massachusetts during the period of October 16, 2015 to October 18, 2018 ("the Relevant Time Period");

(2) Certification of a collective action under 216(b) of the Fair Labor Standards Act for settlement purposes only;

(3) Approval of the Notice of Collective Action Settlement;

(4) Appointment of Plaintiff's attorneys as Collective Action Counsel;

(5) Appointment of Plaintiff as the Collective Representative; and

(6) Appointment of Analytics LLC as the third-party claims administrator which will mail the Notice explaining the proposed Collective Action Settlement along with settlement checks to putative Collective Action Settlement members.

DATED this 13th day of May 2019.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

After discovery including document production and depositions as well as arm's-length negotiations and a mediation, the Parties reached an agreement to resolve all issues, claims, and disputes related to this lawsuit. Plaintiff therefore seeks approval of a proposed settlement on behalf of Plaintiff and a collective consisting of 1,117 telephone-dedicated employees Defendant employed at call centers in Arizona, Florida, Connecticut and Massachusetts. Subject to Court approval, the Parties have settled the claims in this lawsuit for the gross settlement amount of $447,500.00, which includes settlement payments to eligible claimants; attorneys' fees and costs directly related to the case; and individual service payments to Plaintiff and seven Opt-in Plaintiffs. (The Parties' Settlement Agreement is attached hereto as Exhibit 1).

This Settlement is an outstanding recovery for the Collective Members and reflects the diligent, efficient, and skilled work of Collective Action Counsel. The Complaint filed eight months ago was limited claims brought on behalf of Defendant's Arizona call center workers. The proposed Settlement includes Defendant's call center workers in three additional states. Further, any Collective Member who does not like the proposed Settlement can simply decline to participate and will not waive any rights.

Under the proposed settlement, a notice of settlement and a claim form will be mailed to the 1,117 individuals who are eligible for settlement payments ("Collective Members"). If a Collective Member wishes to participate in the settlement, he or she has 45 days from the date of mailing the notice to sign and postmark a claim form. Once the notice period has expired, a third-party claims administrator will report the names and settlement payment information for those Collective Members who submit timely and valid claim forms. Thereafter, Defendant will submit the settlement funds to the claims administrator who will then issue the settlement payments to the Collective Members.

Under the proposed settlement, the settlement payments equal approximately $9.61 for each full time week worked during the recovery period of October 6, 2015 to October 18, 2018. For example, if a Collective Member worked as a phone representative for at

least forty hours in 50 workweeks (i.e., approximately one year) during the relevant time period, that individual is eligible to receive a gross settlement payment of $460.50; if a Collective Member worked as a phone representative for 25 workweeks of forty hours or more (or approximately six months), they will receive $230.25 under the settlement. If a person does not wish to participate in the settlement, then they can simply not submit a claim form and they will not release any claims of any nature.

This Court should approve this settlement as a reasonable compromise of a bona fide dispute. A proposed Order approving the settlement is attached hereto as Exhibit 2.

## II.  Procedural and Factual History

### A.  *The Litigation*

On July 12, 2018, Plaintiff filed a Collective Action Complaint against Defendant in the United States District Court for the District of Arizona alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*, for failure to pay statutorily-mandated overtime to a collective of individuals who worked in Arizona (hereinafter, the "Lawsuit"). On August 8, 2018, Defendant filed an Answer to the Complaint denying that it failed to pay Plaintiff or any other person overtime as alleged in the Complaint. Further, Defendant filed a Motion to Compel Arbitration, to Dismiss, or Alternatively, to Stay, and to Designate AAA as the Parties' Arbitrator. Thereafter, the parties fully briefed Defendant's motion.

The Parties exchanged disclosures. On October 19, 2018, the Court entered an Order approving the Parties' stipulation to stay the proceedings and discovery in order to allow the Parties to engage in settlement discussion through private mediation.

On October 29, 2018, the parties engaged in a full day mediation in Los Angeles, California with third-party mediator Mariam Zadeh, Esq., a nationally recognized mediator with extensive wage and hour experience. The Parties did not reach a settlement at the mediation. The Parties subsequently re-engaged in discovery and exchanged discovery answers, responded to document production requests and engaged in two depositions.

On January 2, 2019, Plaintiff filed an Amended Complaint seeking unpaid FLSA

overtime on behalf of telephone-dedicated sales agents who worked in Arizona, Florida, Connecticut and Massachusetts. On January 16, 2019, Defendant renewed its Motion to Compel Arbitration, to Dismiss, or Alternatively, to Stay, and to Designate AAA as the parties' Arbitrator. Plaintiff filed a response brief to Defendant's renewed Motion. On January 30 and 31, 2019, the parties engaged in and completed two depositions. On or about February 1, 2019, the Parties reached an agreement on a term sheet summarizing key terms of a collective action settlement.

### B. *Collective Action Certification for Settlement Purposes Only*

Section 216(b) of the FLSA permits a plaintiff to file a collective action on behalf of herself and other "similarly situated" employees, to recover unpaid overtime wages from employers who violate section 7 of the FLSA. 29 U.S.C. § 216(b). For purposes of this settlement, the Parties stipulate and agree[1] that the Collective Members are similarly situated. For the reasons set forth herein, this Court should grant collective action certification for settlement purposes only and approve the proposed settlement as a reasonable resolution of a bona fide dispute.

### III. Summary of Settlement Terms

### A. *Gross Settlement Terms*

The Parties have agreed to fully and finally resolve the claims in this action for a maximum gross settlement amount ("GSA") of $447,500.00. This amount comprises all payments to Collective Members; attorneys' fees, costs and expenses related to the action; individual service payments to Plaintiff Quintana and the seven Opt-in Plaintiffs; and the costs of the third-party claims administrator. (Ex. 1, ¶ II (A)). The employer's share of taxes will be paid from the residual (unclaimed funds) of the Net Settlement Amount. (*Id.*).

### B. *Net Settlement Amount*

After all Court-approved deductions to the GSA, including reasonable service awards, attorneys' fees, and costs of litigation, and claims administration expenses, the remaining net settlement amount ("NSA") will be distributed to each Collective Member

---

[1] Defendant reserves the right, should this Court not grant approval of this Settlement, to contest every aspect of collective action certification under 29 U.S.C. § 216.

4

who submits a timely and valid Claim Form (a "Settlement Plaintiff"). (Ex. 1, ¶¶ I(A), III(C)). The estimated NSA is approximately $250,681.00 (i.e., $447,500 - $134,250 fees, $18,000 costs, $30,000 incentives, and $14,569.00 in administration costs = $250,681.00), subject to Court approval. (*Id.*).

### C. *Formula for Distribution to Participating Collective Members*

Each member of the Collective who worked one or more workweeks of 40 hours or more shall by formula be allocated a pro rata share of the Net Settlement Amount in proportion to the number of overtime workweeks each person worked as against the total number of overtime workweeks worked by all Collective Members, as set forth in Exhibit 1. The exact amounts of the distributions to members may modestly vary from the amounts estimated in Ex. 1 based on the Court's awards of reasonable service awards, attorneys' fees, costs of litigation, settlement administration costs, and any other costs. The Net Settlement Amount shall be distributed to each Settlement Plaintiff upon timely receipt of his/her consent form by a Third-Party Administrator to be selected by agreement of the Parties.

The 1,117 Collective Members worked an estimated 26,086 workweeks in the aggregate of 40 hours or more during the period of October 16, 2015 up to October 18, 2018. Based on the Net Settlement Amount and on the estimated number of full time workweeks worked by the Collective Members, the settlement equates to approximately $9.61 per full time week worked (i.e., Net Settlement Amount of $250,681.00 ÷ 26,086 workweeks = $9.61). For example, if a Collective Member worked as a phone representative for 50 workweeks of at least forty hours (i.e., approximately one year) during the relevant time period, that individual is eligible to receive a gross settlement payment of $480.50; if a Collective Member worked as a phone representative for 25 workweeks (or approximately six months), they will receive $240.25 under the settlement.

### D. *Released Claims*

Pursuant to the Settlement Agreement, individuals who elect to participate in the settlement will release and discharge:

5

>Defendant, and each of its heirs, successors, assigns, relatives by blood or marriage, its past and present officers, directors, members, managers, current and former employees, agents, representatives, attorneys, insurers, parent corporations, subsidiary corporations, related entities, assigns, successors and predecessors, and all persons acting by, through, under, or in concert with any of them (collectively hereafter, the "Released Parties") from all wage and hour claims made against Defendant or that reasonably could have arisen out of the same facts alleged in this Lawsuit, including but not limited to, any and all claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; any and all claims arising out of any federal or state wage, minimum wage, or overtime laws; and any claims relating to unpaid wages, minimum wage, overtime compensation, liquidated damages, incentive compensation, bonuses, penalties, premiums, interest, attorneys' fees, and costs against the Released Parties, accrued to date, that arise from any and all wage and hour claims made against Defendant or that reasonably could have arisen out of the same facts alleged in this Lawsuit, whether or not the Plaintiff, Current Opt-In Plaintiffs, and each Settlement Plaintiff knows or suspects them to exist.  The Plaintiff, Current Opt-In Plaintiffs and each Settlement Plaintiff shall be deemed to have, and by operation of the final judgment approved by the Court shall have, fully, finally, and forever settled and released all of the Released Claims and Current Opt-In Released Claims as defined above.
>
>Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in the Settlement Agreement, a Settlement Plaintiff will not release or waive any claims that may not be released or waived under state and/or federal law.

(Ex. 1, ¶ IV(B)).

If a Collective Member does not wish to participate, then s/he will not release any wage and hour claims or any other claims.

### E.    *Service Awards*

The Settlement Agreement contemplates a service payment to the named Plaintiff in the amount of $9,000.00 and a service award payment of $3,000.00 each for the seven current Opt-in Plaintiffs, to acknowledge their service to the case, settlement and Collective Members, as set forth in Plaintiff's separate motion to approve attorneys' fees, costs and service awards. (Ex. 1, ¶ II(D)).  The named Plaintiff and the seven current Opt-in Plaintiffs are also providing a general release, whereas the Collective Members' release is limited to their wage and hour claims.  (Ex. B to the Settlement Agreement attached hereto as Ex. 1).

6

### F.     *Settlement Administration*

The Parties agree that Analytics LLC will handle the administration of the Settlement (including notice, receipt of claims, and processing and mailing of settlement payments to Settlement Plaintiffs) as Third-Party Claims Administrator. Defendant will provide the Claims Administrator with the name and last known mailing address of each Collective Action Member. The Claims Administrator will thereafter update the address through the National Change of Address database and then mail to each individual a Collective Action Settlement Notice and a Claim Form, attached hereto as Exhibit 3 and 4 respectively.

The Claim Form requires of Collective Action Members only a modest showing of eligibility to make a valid claim for participation in the Settlement.  (Ex. 4).  By signing the Claim Form, the potential Claimant confirms that s/he has read the Settlement Notice and understands its terms.  (*Id.*).  The Settlement Notice sets forth the relevant terms of the Settlement, and directs the Collective Action Members to contact Collective Action Counsel or the Claims Administrator if the Collective Member has questions. Timely return of the completed and signed Claim Form is the only step required for opting-in to the Collective Action Settlement and receiving the applicable distribution pursuant to the Settlement Agreement.  The Collective Members will have 60 days from the date of mailing to postmark and return a Claim Form.  (Ex. 1, ¶ III (C)).

Within seven (7) days after the Effective Date of the Agreement (following the filing of all opt-in notices, the dismissal with prejudice of the lawsuit, and the resolution of any appeal or appeals period), the Claims Administrator will mail each participating Collective Member his/her respective distribution check to their last known address as provided by the Settlement Plaintiff on his/her completed Claim Form.  (Ex. 1, ¶ III (C)).  Settlement checks that remain uncashed for a period of 180 days shall escheat as unclaimed property to an appropriate state agency or fund, as determined by the Third-Party Administrator, where the participating Collective Member may retrieve their settlement payment. (*Id.*).

### G. *Attorney Fees and Costs*

Under the Settlement Agreement, and subject to Court approval, Plaintiff's Counsel seek $134,250.00 in attorneys' fees, plus reimbursement of costs not to exceed $18,000.00 for out-of-pocket costs and expenses incurred in litigating and resolving this matter. (*Id.*, ¶ II (E)). Plaintiff's Counsel have filed a separate Motion for an Award of Attorneys' Fees and Costs.

## IV. Legal Standard

Settlement of collective action claims under the FLSA requires the approval of the court or the Secretary of Labor. *Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014); *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05–cv–0279, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Wagner v. County of Inyo*, No. 1:17-cv-00969, 2018 WL 5099761 (E.D. Cal. Oct. 18, 2018). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, to determine whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172.

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Wagner v. County of Inyo*, 2018 WL 5099761, *3; *Fontes v Drywood Plus, Inc.*, Case No. 12-cv-1901-PHX-LOA, 2013 WL 6228652 (D. Az. Dec. 2, 2013)(unreported case); *Khanna v. Inter–Con Sec. Sys., Inc.*, No. 09-cv-2214, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). "To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts

8

in this circuit have balanced factors such as:

> the strength of the Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."

*Wagner v County of Inyo*, Case No. 1:17-cv-00969-DAD-JLT, 2018 WL 5099761 (Oct. 18, 2018 E.D. Cal.)(slip copy); *Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014); *Almodova v. City & Cty. of Honolulu*, No. 07-cv-00378, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply). In settling FLSA actions, district courts in this circuit have adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute should be approved to promote the efficiency of encouraging settlement of litigation. *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-5243, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

## V.     **The Settlement is Fair and Reasonable and Should Be Approved**

### A.     *This Case Presented a Bona Fide Dispute Over Entitled to Overtime*

Plaintiff's entitlement to overtime, their ability to obtain conditional certification, survive decertification, their ability to maintain a certified collective through trial, and the amount of overtime allegedly due, are all material issues that Defendant vigorously disputed. The settlement reflects compromise on all of these issues.

The settlement occurred only after the Parties engaged in significant discovery which included document productions and the depositions of Defendant's supervisors. Additionally, the settlement was the result of arm's-length negotiations following a mediation with a nationally recognized, third party mediator with significant experience in wage and hour class and collective cases. Recognizing the uncertain legal and factual issues involved, the Parties ultimately reached the settlement after several months of

negotiations subsequent to a full day mediation. Accordingly, the Parties had a bona fide dispute prior to reaching their proposed settlement.

### B.  The Settlement is a Fair and Reasonable Resolution

#### i.  The Strength of Plaintiff's Case

The proposed settlement is fair and reasonable given the strength of Plaintiff's case. The Court should consider whether "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). While Plaintiff maintains that she has a strong case, it must be noted that Defendant denies all alleged liability and denies that Plaintiff or any other Collective Members worked any unpaid overtime. Defendant contends that Collective Members were indeed paid for all time worked and all time that they recorded on their own timesheets. Additionally, Defendant asserts that Collective Members were not damaged in any way by any act or omission of Defendant. Specifically, Defendant asserts that any unpaid pre-shift work is the result of Collective Members' not following Defendant's written and enforced policies of employees recording all time worked on their timesheets. Further, the Defendant argued that even if Plaintiff and the phone agents worked any unpaid minutes, it was *de minimus* and therefore, not compensable or actionable.

Defendant also had written policies and reminders that off the clock work by any Collective Member is strictly prohibited. This too presented a hurdle for Plaintiff because these written policies, along with the specific written instructions to record on timesheets the time spent logging into the computer and software programs, would have been utilized by Defendant to dispute Plaintiff's claims of willfulness. A finding of non-willfulness reduces the recovery period from three years to two years and potentially eliminates an award of liquidated damages. *See e.g.* 29 U.S.C. § 255(a)(willful violations extend statute of limitations from two to three years); 29 U.S.C. § 260(no liquidated damages if employer shows good faith).

While the strength of the case is an important consideration, "'the settlement or fairness hearing is not be turned into a dress rehearsal for trial on the merits,' and the court

is not 'to reach any ultimate conclusions on the merits of the dispute…'" *Khanna v. Intercon Security Sys., Inc.*, Case No. 2:09-cv-2214 (E.D. Cal. April 8, 2014), *quoting Officers for Justice v. Cicl Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982). For all of the above reasons, this factor supports approval of the settlement.

        *ii.*       *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

In addition to the risks above, Plaintiff faced the risk and uncertainty of not being able to even pursue her claims in Court due to the arbitration provision raised by the Defendant. Under this arbitration provision, Defendant moved to have the case transferred to an arbitration forum. Moreover, absent settlement, Plaintiff faced additional significant certification risks. For example, the named Plaintiffs only worked in Arizona, yet they were seeking certification of a collective of individuals from other states as well. Defendant would have argued that the Plaintiff had no personal knowledge of any policies or practices at any facilities outside Arizona.

Even if the Court conditionally certified the collective, Plaintiff faced additional material risks and further litigation with an inevitable motion to decertify any conditionally certified collective or, in the alternative, large groups and swaths of opt-in Plaintiffs in any conditionally certified collective. Plaintiff faced further risks if Defendant filed a motion for summary judgment relating to any of its asserted affirmative defenses. Further, if the Plaintiff had survived i) conditional certification, ii) decertification and iii) summary judgment proceedings, she still faced major risks associated with iv) a collective trial.

A trial involving the claims of hundreds of opt-in Plaintiffs and the defenses raised by Defendant with respect to the collective *and* to individual Collective Members poses its own set of complexities, ranging from various legal and factual issues and proof issues, to coordinating testifying opt-ins from states across the country. There would likely be voluminous expert discovery, and the Parties would present competing trial plans to the Court for consideration in managing a collective action trial. Defendant likely would argue throughout the process that any collective action trial is inappropriate. Post-trial litigation, including appeals, would be a near certainty, and Plaintiff would face material outcome-

11

determinate risks at each and every procedural point in this case through appeal.

With respect to the expense, additional litigation undoubtedly would increase the expenses and complexity of this consolidated case. Absent settlement, Plaintiff would be required to incur the time and expense of remaining fact depositions and expert depositions in stage one. If a collective had been conditionally certified, the expense of issuing a notice and opt-in forms to 1,117 individuals would have likely cost of approximately $15,000.00 for a third-party administrator to handle the notice, based on the experience of Plaintiff's counsel in other large wage and hour settlements. Plus, Plaintiff faced additional expenses in fact and expert discovery. This would have included written discovery issued to a sample of opt-in Plaintiffs during stage two, depositions of opt-in Plaintiffs from various states across the country, and depositions of supervisors and other fact witnesses from across the country at different call centers. This would have increased costs greatly, especially given the 1,117 potential opt-in Plaintiffs. After fact depositions during any stage two discovery, the Parties would incur the additional expense of summary judgment motions and experts. A trial of such a large group as the Collective Members would have required witnesses from across the country to be flown to the trial, requiring additional significant expenses. For all of these reasons, the risk, expense, complexity and duration of further litigation in this case are factors that weigh in favor of settlement.

### iii. The Amount Offered in Settlement

At $9.61 per full time workweek, the proposed settlement payments amount to approximately 5 minutes per day of unpaid work, or 25 minutes per week of unpaid overtime. In her Complaint, Plaintiff alleged that she and the collective worked an average of 10 to 15 minutes per day of unpaid work. Given the risks, the factual and legal issues in this case, and the fact that the settlement is pre-certification and allows for a guaranteed payment now rather than the chance of payment after likely lengthy litigation, the settlement amount in this case is excellent for the Collective Members. Courts routinely approve class action settlements where the settlement amount is a lower percentage of the claimed amount of damages. *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008)(affirming settlement representing 9% of maximum potential recovery);

*Bellinghausen,* 306 F.R.D. at 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class"); *Custom LED v. eBay, Inc.*, No. 12-cv-350, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) (1.8% to 16% of maximum recovery approved); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd 331 Fed.Appx. 452 (9th Cir. 2009)(finding a wage and hour settlement in the range of 25 to 35% of claimed damages fair and reasonable in light of the uncertainties involved in the litigation); *Alleyne v. Time Moving*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010)(unpaid overtime FLSA settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery); *Nichols v. Smithkline Beecham*, No. 006222, 2005 WL 950616, at *16 (E.D. Pa. April 22, 2005) (approving settlement that represented between 9.3% and 13.9% of the claimed damages).

Here, the Settlement significantly exceeds the upper range of amounts commonly approved by courts. The recovery equates to approximately 25 minutes of unpaid weekly overtime. This confirms that the amount offered in settlement is substantially more than fair and adequate.

### *iv.   The Stage of Proceedings*

Although discovery is not complete, the Parties have engaged in substantial discovery, including answering interrogatories and document production requests, producing documents and collective-wide payroll data, and deposing two supervisors. The Parties carefully investigated the claims and facts alleged in this action, and have made a thorough study of the legal principles applicable to the claims in this action and a careful review of documents and collective-wide payroll information. The Parties have participated in a detailed, full day mediation with an experienced and nationally recognized

third-party mediator. Thus, the stage of litigation has advanced to a state where Plaintiff's counsel can fully and fairly evaluate the claims and defenses and the value of the settlement.

### v.    *The Experience and Views of Counsel*

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. No. 11-cv-05188, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014). Plaintiff's Counsel are experienced in class and collective action litigation. (Ex. 4, Ryan Decl., ¶ 7; Ex. 5, Bormes Decl., ¶¶ 7, 8). Plaintiff's Counsel had a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the settlement. (Ex. 4, Ryan Decl., ¶¶ 8-21; Ex. 5, Bormes Decl., ¶ 15). In Plaintiff's Counsel's opinion, the settlement is fair, reasonable, and adequate. (Ex. 4, Ryan Decl., ¶ 17; Ex. 5, Bormes Decl., ¶¶ 17, 22). Accordingly, this factor weighs in favor of approval of the FLSA settlement.

### vi.    *There is No Fraud or Collusion Behind the Settlement*

This settlement was the result of intense adversarial, arm's-length negotiations that took place after detailed investigation, substantial discovery involving collective-wide payroll data for over 1,000 individuals, supervisor depositions, and hard negotiations at mediation and thereafter in reaching a settlement. The parties took a reasonable approach by using payroll record data to calculate the common fund to provide back overtime pay. Additionally, Mariam Zadeh, Esq., an experienced and nationally recognized mediator who specializes in wage and hour cases and has decades of experience mediating large wage and hour cases, assisted the parties at mediation and negotiating the terms that ultimately resulted in the settlement. As explained above, the terms of the Settlement were reached during extensive arms-length negotiations by experienced counsel after thorough investigation and analysis, and the terms of the Settlement were reached only after weeks of negotiations and considerable discovery. The foregoing demonstrates that the proposed Settlement is fair and reasonable.

## VI. Conclusion

For the reasons set forth above, Plaintiff respectfully request that this Honorable Court (i) approve the settlement as a fair and reasonable resolution of a bona fide dispute; (ii) enter the Order attached hereto as Exhibit 2 granting collective action certification for settlement purposes only and approving the Parties' settlement agreement; and (iii) grant such further relief as this Court deems equitable and just.

May 13, 2019

Respectfully submitted,
Peggy Quintana, individually and on behalf of a collective of persons similarly situated.

/s/ Thomas M. Ryan
One of Plaintiff's attorneys

# CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2019, I transmitted the attached document to counsel for Defendant by CM/ECF via the addresses listed below:

Kami M. Hoskins
Annelise M. Dominguez
Gordon Rees Scully Mansukhani, LLP
111 W. Monroe St., Suite 1600
Phoenix, AZ 85003
khoskins@grsm.com
adominguez@grsm.com

/s/ Thomas M. Ryan
One of Plaintiff's Attorneys