**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peggy Quintana, | No. CV-18-02169-PHX-RM |
| Plaintiff, | **ORDER** |
| v. | |
| HealthPlanOne LLC, | |
| Defendant. | |

Pending before the Court is Plaintiff's Unopposed Motion and Memorandum for Approval of the Parties' FLSA Collective Action Settlement (Doc. 55) and Plaintiff's Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Award of Collective Representative Service Payments (Doc. 56). Also before the Court is Defendant's Stipulated Request for a Telephonic Status Conference (Doc. 59). Because the Court does not find that a telephonic status conference would assist in the resolution of the pending motions, the Court will deny the request for a telephonic status conference. The remaining motions will be granted in part; the Collective Action Settlement will be approved.

**I.    Background**

Plaintiff Peggy Quintana filed the operative Collective Action Complaint (Doc. 41) on January 2, 2019. Plaintiff, who was Defendant's employee, alleges on behalf of herself and a collective of 1,117 similarly situated persons that Defendant failed to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

Specifically, Plaintiff alleges that she and other employees at Defendant's call centers were required to perform work before and after scheduled shift times, for which they were not paid. Specifically, Plaintiff estimates that she and other similarly situated employees performed between 10 and 15 minutes of unpaid overtime work each day. Throughout the pendency of this action, seven additional plaintiffs have consented to join the lawsuit ("Opt-in Plaintiffs"). (*See* Docs. 17, 19, 22, 45.) The Parties engaged in a full-day mediation but were unsuccessful at settling their claims at that time. (*See* Doc. 30.)

On January 31, 2019, the Court issued a Scheduling Order setting deadlines for the first phase of FLSA discovery. (*See* Doc. 52.) Meanwhile, Defendant sought to compel arbitration of the dispute (Doc. 43), but on February 2, 2019, before the Motion to Compel was fully briefed, the Parties notified the Court that a settlement had been reached (Doc. 53). The instant motions followed.

## II. Collective Action Settlement

The unopposed motion seeks (1) approval of the proposed settlement agreement on behalf of Plaintiff and a collective, (2) certification of a collective action for settlement purposes only, (3) approval of the notice of collective action settlement, and (4) appointment of (a) Plaintiff's attorneys as collective action counsel, (b) Plaintiff as collective representative, and (c) Analytics LLC as the third-party administrator. (*See* Doc. 55 at 5.)

### A. Standard for Judicial Approval of FLSA Settlements

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Court approval is required for settlement of private FLSA claims. *Jones v. Agilysis, Inc.*, No. C 12-03516 SBA, 2014 WL 108420, *2 (N.D. Cal. Jan. 10, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "In reviewing an FLSA settlement, the district court's obligation is not to act as caretaker but as gatekeeper; rather, it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the

Act's purposes." *Id.* (internal quotation marks and modifications omitted). Because the Ninth Circuit has not provided guidance for determining whether an FLSA collective action settlement should be approved, district courts in this Circuit look to the Eleventh Circuit's standard, requiring the settlement to be "a fair and reasonable resolution of a bona fide dispute." *Quiroz v. City of Ceres*, No. 1:17-CV-00444-DAD-BAM, 2019 WL 1005071, at *2 (E.D. Cal. Mar. 1, 2019) (citing *Dunn v. Teacher's Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016)); *see also Lynn's*, 679 F.2d at 1352-53.

To find a bona fide dispute, "[t]here must be 'some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims.'" *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008) (alterations by *Selk*)). "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Id.*

Having found a bona fide dispute, some district courts in this Circuit have looked by analogy to Federal Rule of Civil Procedure 23 to consider the fairness of the collective action settlement. *Jones*, 2014 WL 108420, at *2 (citing *In re Bank of America Wage & Hour Emp. Litig.*, No. 10–MD–2138–JWL, 2013 WL 6670602, at *2 (D. Kan. Dec. 18, 2013)); *see also Selk*, 159 F. Supp. 3d at 1172-73. The Supreme Court, however, has instructed that "Rule 23 actions are fundamentally different from collective actions under the FLSA," *Genesis*, 569 U.S. at 74, and the Ninth Circuit has discussed at length the differences between FLSA collective actions and class actions under Rule 23, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018) ("Collective actions and class actions are creatures of distinct texts—collective actions of section 216(b), and class actions of Rule 23—that impose distinct requirements."). In order to account for the limited relevance of the Rule 23 standards, some district courts employ a "totality of circumstances approach that emphasizes the context of the case and the unique

importance of the substantive labor rights involved." *Selk*, 159 F. Supp. 3d at 1173 (citing *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see e.g. Kerzich v. Cty. of Tuolumne*, No. 1:16-cv-01116-DAD-SAB, 2019 WL 1755496, at *4 (E.D. Cal. Apr. 19, 2019) (adopting the *Selk* totality of the circumstances approach); *Banks v. Pyramid Consulting, Inc.*, No. 3:18-CV-00078-H-JLB, 2019 WL 338493, at *2-3 (S.D. Cal. Jan. 28, 2019) (same). The Court finds the totality of the circumstances approach of more relevance, and will employ it here.

A district court employing a totality of the circumstances approach considers the following factors to determine whether the settlement is a reasonable compromise of the dispute:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Selk*, 159 F. Supp. 3d 1173. After consideration of the factors, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1173-74 (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, *2 (N.D. Cal. Dec. 19, 2012)) (internal quotation marks omitted).

### B. Discussion

The Parties agreed to settle this matter for $447,500.00, "which includes settlement payments to eligible claimants; attorneys' fees and costs directly related to the case; and individual service payments to Plaintiff and seven Opt-in Plaintiffs." (Doc. 55 at 6.) This settlement, which the Parties characterize as an "outstanding recovery for the Collective Members," was reached after some discovery and a full day of mediation. (Doc. 55 at 6.) From this gross total, the parties indicate that there are $196,819.00 in fees, incentives, and administrative costs. (Doc. 55 at 9.) Once those costs are subtracted out, each collective member is to receive a pro rata share of the award based upon their fraction of the total overtime workweeks by all collective members. (Doc. 55 at 9.) Third-

party administrator Analytics LLC is to be responsible for contacting settlement plaintiffs with information regarding the settlement (*see* Settlement Notice, Doc. 55-3) and joining the settlement collective (*see* Claim Form, Doc. 55-4), and then distributing the award amongst the members. (Doc. 55 at 9, 11.)

The Settlement Agreement provided for $134,250.00 in attorneys' fees as well as reimbursement to Plaintiff's attorneys for costs up to $18,000.00, requested separately in the concurrently pending Motion for an Award of Attorneys' Fees and Costs (Doc. 56).

### 1. **Bona Fide Dispute**

The Parties assert that this case presents a bona fide dispute over entitlement to overtime wages. (Doc. 55 at 13.) In support of this assertion, the Parties explain that there are material disputes as to whether the collective action plaintiffs would be able to obtain conditional certification, survive a decertification motion, maintain a certified collective through trial, and the amount of damages due. (Doc. 55 at 13-14.)

Although this Court has not previously had an opportunity to address Defendant's motion to dismiss (*see* Doc. 50), or otherwise address the merits of Plaintiff's claims, the Court finds there is a bona fide dispute. The original complaint was opposed (*see* Docs. 1, 13), as was the amended complaint (*see* Docs. 41, 44). The Parties engaged in an unsuccessful attempt to arbitrate their claims during the pendency of this action, (*see* Doc. 30) and Defendant sought to compel Plaintiff to arbitrate these claims pursuant to the Federal Arbitration Act. (*See* Docs. 11, 43.) In addition, a review of the substance and merits of these filings reveals that there is "some doubt" as to whether Plaintiff would succeed on the merits of her claim. *See Selk*, 159 F. Supp. 3d at 1172. Because there is a bona fide dispute, the Court will engage in the second step of the analysis.

### 2. **Fair and Reasonable Resolution**

Having found a bona fide dispute, the Court turns to an assessment of whether the settlement is a fair and reasonable resolution of the dispute. The Court will address the Parties' arguments regarding the fairness and reasonableness of the settlement in the context of the *Selk* factors, listed *supra*. Based upon the below evaluation, the Court finds

that the settlement is fair and reasonable.

### a. **Plaintiff's Range of Possible Recovery**

The approximate payout of the settlement would be for about 5 minutes of unpaid work per day, or 25 minutes of unpaid time per week. (*See* Doc. 55 at 16.) The Complaint, however, alleges that each collective member worked about 10 to 15 minutes of over-time per day; the recovery amounts to one-half or one-third of the total possible recovery. The Parties cite a string of cases in which district courts in this Circuit have approved settlement recoveries less than 30 to 50 percent of the Plaintiff's possible recovery. (Doc. 55 at 16-17); *see e.g. Jones*, 2014 WL 2090034, at *2 (approving an FLSA settlement at 30 to 60 percent of possible recoverable damages). The Court finds these cases persuasive; this factor weighs in favor of approval.

### b. **Stage of Proceedings and Amount of Discovery Completed**

The Parties engaged only in a portion of the first phase of discovery, but filed for approval of the instant settlement before the Court-imposed deadline for conditional certification. (*See* Doc. 52.) Nevertheless the Parties indicate that they have exchanged "substantial discovery," sufficient to enable Plaintiff's counsel to "fully and fairly evaluate the claims and defenses and the value of the settlement." (Doc. 55 at 17-18.) The Court finds that the parties have engaged in ample discovery to allow for an "informed decision" regarding settlement, *see Selk*, 159 F. Supp. 3d at 1177; this factor also weighs in favor of approval.

### c. **Seriousness of the Litigation Risks Faced by the Parties**

Plaintiff explains that without a settlement she faces uncertainty as to conditional certification of the collective, potential decertification, summary judgment, and, ultimately, a collective trial. (Doc. 55 at 15-16.) In addition, Plaintiff explains that continuing the litigation would significantly increase the cost of pursuing these claims. (Doc. 55 at 16.) The Court is persuaded that the "significant risk" posed by continued litigation, which could result in lesser or no recovery for the collective, means that this factor weighs in favor of approval. *See Selk*, 159 F. Supp. 3d at 1175-76.

### d. Scope of Release Provision in the Settlement Agreement

In evaluating the scope of the release provision, the Court seeks "to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. "Courts are especially skeptical of release provisions that require employees to forfeit claims designed to advance public values through private litigation, such as claims for discrimination under Title VII of the Civil Rights Act of 1964." *Selk*, 159 F. Supp. 3d 1178. Where, like here, the FLSA settlement provides recovery only for unpaid wages and related damages, "a release provision should be limited to the wage and hour claims at issue." *Id.*

The agreement contains a release provision with regard to all collective action members covering the period through March 2019. (Doc. 55-1 at 14-15.) The Settlement provides the following releases:

> (1) all wage and hour claims made against Defendant or that reasonably could have arisen out of the same facts alleged in this Lawsuit, including but not limited to, any and all claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*;
> (2) any and all claims arising out of any federal or state wage, minimum wage, or overtime laws; and
> (3) any claims relating to unpaid wages, minimum wage, overtime compensation, liquidated damages, incentive compensation, bonuses, penalties, premiums, interest, attorneys' fees, and costs against the Released Parties, accrued to date, that arise from any and all wage and hour claims made against Defendant or that reasonably could have arisen out of the same facts alleged in this Lawsuit, whether or not the Plaintiff, Current Opt-In Plaintiffs, and each Settlement Plaintiff knows or suspects them to exist.

(Doc. 55 at 10; *see also* Doc. 55-1 at 14.[1]) This release relates only to wage and hour claims, and thus is not overbroad. *See c.f.*, *Garcia v. Jambox, Inc.*, No. 14-CV-3504 (MHD), 2015 WL 2359502, at *3-4 (S.D.N.Y. Apr. 27, 2015); *Ambrosino v. Home Depot*

---

[1] The release in the "Confidential Settlement Agreement and General Release" at Exhibit 1, B (Doc. 55-1 at 22-83) contains a broader release than the above-described release. This "general release" would be applied only to Plaintiff Quintana and the seven Opt-in Plaintiffs, apparently as compensation for the separately requested service payments. (Doc. 55 at 6.) At this stage, the Court's consideration is limited to the narrower release, which the Parties presented in their Motion and at Exhibit 1, ¶ IV.

*U.S.A., Inc.*, No. 11CV1319 L(MDD), 2014 WL 1671489, at *2-3 (S.D. Cal. Apr. 28, 2014). The Court finds this release to be fair and reasonable; this factor weighs in favor of approval.

### e. Experience and Views of Counsel and the Opinion of Participating Plaintiffs

Attorneys Thomas M. Ryan and James X. Bormes each provided declarations listing their extensive experience litigating FLSA collective action claims. (*See* Docs. 55-5, 55-6.) They also expressed their view that "[i]n Plaintiff's Counsel's opinion, the settlement is fair, reasonable, and adequate." (Doc. 55 at 18.) "In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Selk*, 159 F. Supp. 3d at 1176 (quoting *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. Jul. 11, 2014)) (alterations in original); *see also Rodriguez v. West Pub., Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation" (internal quotation marks omitted)).

Of 1,117 employees eligible to opt in to this collective action, only Plaintiff and seven Opt-in Plaintiffs have participated in the litigation thus far. Neither Plaintiff nor any Opt-in Plaintiffs have expressed opposition to this settlement. Although it is impossible to assess whether the yet-to-be-notified potential collective action members would object, "lack of objections by the active members of the class weighs in favor of finding the Settlement fair and reasonable." *Selk*, 159 F. Supp. 3d at 1176. Thus this factor also weighs in favor of approval.

### f. Possibility of Fraud or Collusion

There is nothing in the record to suggest there was fraud or collusion in reaching the settlement agreement. To the contrary, the record shows that the Parties engaged in arm's-length negotiations, motivated to reach a mutually agreeable resolution of their dispute. Accordingly, the Court finds that this factor weighs in favor of approval.

### 3. Conclusion

The Court has found that the proposed settlement in the amount of $447,500.00 is a fair and reasonable resolution of a bona fide dispute. The Court will approve the settlement.

## III. Incentive Payments

Plaintiff's motion indicates that the Parties have agreed to give Plaintiff Peggy Quintana $9,000.00, and each of the seven Opt-in Plaintiffs $3,000.00, to acknowledge their involvement in this matter. (Doc. 55 at 6.) Specifically, this award is meant to compensate for "expending significant time and effort since inception of the case, and subjecting themselves to risk of unfavorable treatment by future employers." (Doc. 56 at 23.) Apparently as a condition of the incentive payments, these eight Plaintiffs are to be given general releases, much broader than the wage-and-hour release to be given to the other collective members. (Doc. 55 at 6.)

A district court may, in its discretion, award an incentive payment to a named plaintiff in settlement of an FLSA action as compensation for work done on behalf of the collective. *Selk*, 159 F. Supp. 3d at 1181. Courts look to the actions taken by the named plaintiff in protecting the collective's interests, how much benefit such actions have provided the collective, and the time and effort expended by the named plaintiff. *Id.* "Courts will scrutinize large incentive payments to ensure that the prospect of a large incentive did not encourage a named plaintiff 'to accept [a] suboptimal settlement[ ] at the expense of the class members whose interests they are appointed to guard[.]'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)) (alterations in original).

According to Attorney Ryan, Plaintiff Quintana "actively participated in the case by, for example, regularly discussing the facts of the case with Collective Counsel, providing documents and information to Collective Counsel, assisting in crafting document requests and understanding documents and data produced by Defendant in discovery." (Doc. 56-1 at 8.) With regard to the seven Opt-in Plaintiffs, Attorney Ryan describes their effort as "particularly critical in helping Collective Counsel understand the

structure of Defendant's call center organization, its performance metrics that were applied to the phone agents, its punctuality, attendance and tardiness policies and practices, its timekeeping practices, and in understanding the nature of their and their co-workers' job duties." (Doc. 56-1 at 8.) No explanation or support is provided for giving a general release rather than the limited release discussed above.

The sum total of the incentive payments is $30,000.00, which is approximately 6.7 percent of the full settlement amount. In *Selk*, the district court approved an incentive payment of 11 percent of the total settlement amount to a single named plaintiff, who was also given a general release. 159 F. Supp. 3d at 1171, 1181. Similarly, in *Wagner*, 2018 WL 5099761, at *7, the district court approved an incentive payment for the named plaintiff totaling approximately 7 percent of the full award. *But see Ko v. Natura Pet Prods., Inc.,* Civ. No. 09-2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). The district court in *Wagner* considered both the incentive payment's fraction of the total settlement as well as the incentive payment relative to individual payouts under the settlement. 2018 WL 5099761, at *7. Under the latter consideration, Plaintiff Quintana would be recovering nearly 40 times the recovery of other collective members, and the seven Opt-in Plaintiffs would receive more than 13 times what the collective members are to receive.[2] This is concerning because

---

[2] The Motion provides, by way of an example, that collective members who worked 50 work weeks, or approximately one year, are eligible to receive a $480.50 payout. (Doc. 56 at 7.) This lawsuit covers claims that arose in an approximately three-year period. (*Id.*) Thus, the maximum possible payout for any collective member is approximately $1,441.50. However, Plaintiff Quintana only worked for Defendant for approximately three months, and thus is only eligible for approximately $120.13. (*See* Doc. 41 at 3.) The settlement agreement indicates that 1,117 collective members worked approximately 26,435 work weeks for which they did not receive overtime compensation. (Doc. 55-1 at 4.) Thus, the average per-member compensation will amount to approximately $227.43. The Court uses this average for comparison purposes.

"overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives." *Wagner*, 2018 WL 5099761, at *7 (citing *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)).

Plaintiff Quintana has provided significant assistance in pursuing this action and in working towards the instant settlement. Likewise, the seven Opt-in Plaintiffs have provided useful support that enabled a resolution. The Court nevertheless finds that the incentive payments are excessive and that reducing them will not defeat the purpose of incentivizing future plaintiffs or of compensating these plaintiffs for their efforts. Nor will reduction of the incentive payments cause the entire agreement to fail; the settlement agreement provides that "[t]he Settlement is not conditioned on the Court's approval of the requested Service Award, and any amount that is not approved will remain part of the settlement fund." (Doc. 55-1 at 7.) The Court finds that a one-third reduction to these payouts ($6,000 to Plaintiff Quintana and $2,000 for each to the seven Opt-in Plaintiffs) will serve this dual purpose without risk of overcompensation. In addition, these payments are sufficient consideration for the general release to be given to the Plaintiff Quintana and the Opt-In Plaintiffs. *See e.g.*, *Selk*, 159 F. Supp. 3d at 1179 (approving a general release supported by consideration separate from compensation for unpaid wages); *Fontes v. Drywood Plus, Inc.*, No. CV-13-1901-PHX-LOA, 2013 WL 6228652 (D. Ariz. Dec. 2, 2013) (approving an FLSA settlement agreement containing a general release of claims); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZX), 2013 WL 3013867 (C.D. Cal. June 13, 2013) (approving a general release for only the named plaintiff compensated by an incentive payment). The incentive payments will be reduced accordingly.

**IV.     Attorneys' Fees, Costs, and Expenses**

Plaintiff concurrently filed the Motion For Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Award of Collective Representative Service

Payments (Doc. 56), in response to which Defendant filed a Notice of No Opposition (Doc. 57). Plaintiff's counsel seeks $134,250.00 in attorneys' fees, which is approximately 30 percent of the settlement fund. (Doc. 56 at 7.) In addition, Plaintiff's counsel seeks reimbursement of costs, not to exceed $18,000.00.[3] (Doc. 56 at 7.)

### A. Attorneys' Fees

Plaintiff argues that counsel's fee award should be calculated as a percentage of the total fund, as that is the traditional method in common fund cases. (Doc. 56 at 9.) She further alleges that the requested 30 percent "is within the range of reasonableness under the facts of this settlement and Ninth Circuit case law." (Doc. 56 at 10.)

The FLSA instructs courts to permit payment of reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (overruled on other grounds); *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009) (mem.). The percentage method permits fees to "be assessed against every class members' share[.]" *Six (6) Mexican Workers, et al. v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980)). The Ninth Circuit has set 25 percent of the fund as a "benchmark" attorneys' fee award in common-fund cases. *Mexican Workers*, 904 F.2d at 1311; *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (establishing the 25 percent benchmark award). Nevertheless, a district court should look to the particular circumstances of the case to determine whether "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation[.]" *Mexican Workers*, 904 F.2d at 1311.

Departures from the benchmark percentage "must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances." *Graulty*,

---

[3] The Motion also provides support for Plaintiff Quintana's and the Opt-in Plaintiffs' incentive payments, which the Court addressed in the previous section. *See* Sec. III, *supra*.

886 F.2d at 273. Some circumstances that may be considered include the value of the results obtained, the risks undertaken by class counsel in accepting and pursuing representation, whether representation generated benefits beyond the cash settlement fund, and the percentage rate relative to the market rate. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002). In addition, district courts may "appl[y] the lodestar method as a cross-check of the percentage method." *Id.* at 1050. If the court does so, "the primary basis of the fee award remains the percentage method," but "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* This cross-check is not meant to lessen the award to counsel who settles a case quickly; "in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Id.* at 1050 n.5.

The benchmark fee award here, calculated as 25 percent of the settlement amount, is $111,875.00. Plaintiff seeks an additional five percent, or $22,375.00, for a total attorneys' fee award of $134,250.00. Plaintiff asserts that "in common fund settlements of less than $50 million, such as this one, a higher percentage is often awarded." (Doc. 56 at 13.) Plaintiff cites a string of cases from this Circuit and others in which courts awarded above the benchmark percent of the settlement fund. (Doc. 56 at 13.) Plaintiff explains that Plaintiff's counsel took this case on a contingency fee not to exceed 33 percent of recovery, and provided a "high quality of legal representation." (Doc. 56 at 14.) Lastly, Plaintiff's counsel asserts that the lodestar figure to be used as a cross-check is approximately $133,625.00,[4] which is $625 less than 30 percent of the settlement fund. (Doc. 56 at 16.)

The Court finds that an upward departure from the benchmark percentage is appropriate here. As Plaintiff's counsel describes in the instant motion, this settlement represents an "outstanding recovery" for the collective members. (*See* Doc. 55 at 6.) In addition, Plaintiff's counsel was able to achieve these results early in the litigation, thus

---

[4] Because Plaintiff's counsel did not provide itemized billing that would allow the Court to completely calculate a reasonable attorneys' fee by the lodestar method, the Court relies on Plaintiff's approximation for comparison purposes.

avoiding costly and risky litigation. A 30 percent fee is below the contracted 33 percent contingency fee in this matter. The Court also finds value in not awarding less than the lodestar; the lodestar method inherently incentivizes less than efficient work whereas the percentage-of-recovery method provides the opposite incentive. Finally, 30 percent of the settlement fund is within range of what other district courts have awarded using the percentage method. *See e.g.*, *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6-7 (C.D. Cal. July 27, 2010) (awarding attorneys' fees at 30 percent of a $6,500,000.00 settlement); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (affirming a 28 percent attorney fee award calculated using the percentage method); *Delnoce v. GlobalTranz Enters., Inc.*, No. CV-17-01278-PHX-MHB, 2018 WL 6505868, at *2 (D. Ariz. July 27, 2018) (approving attorneys' fees calculated by the percentage method amounting to more than 33 percent of the settlement fund).

Accordingly, the Court finds that the percentage method is a fair and reasonable method for assessing reasonable attorneys' fees in this case, and that 30 percent of the settlement fund constitutes a reasonable attorneys' fee. The Court will award $134,250.00 in attorneys' fees.

### B. Costs and Expenses

Plaintiff's counsel has incurred "approximately" $17,083.31 in costs and expenses, and anticipates incurring further costs as this matter is brought to conclusion. (Doc. 56 at 21.) Included at Exhibits 1 and 2 are a list of incurred expenses. (Doc. 56-1 at 13; Doc. 56-2 at 10.) Attorney Ryan lists $10,436.73 in incurred expenses (Doc. 56-1 at 13); Attorney Bormes lists $3,980.00 in incurred expenses (Doc. 56-2 at 10). The total between the two is $14,416.73.

A successful Plaintiff is entitled to receive "costs of the action" to be paid by the defendant. 29 U.S.C. § 216(b). And "[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, et al., 2005 WL

1594403, at *23 (C.D. Cal. June 10, 2005)). The itemized costs submitted by Plaintiff's counsel include expenses for filing, service of process, mediation, travel, and copies. (*See* Doc. 56-1 at 13; 56-2 at 10.) Mr. Bormes' itemized list includes a $60 "miscellaneous" cost. (Doc. 56-2 at 10.) This is the only cost for which the Court cannot assess reasonableness, so it will be discounted from the awarded costs. The Court finds that, apart from the miscellaneous expense, the itemized $14,356.73 in costs are reasonable and will be granted. Plaintiff's counsel have not provided any support for an additional $2,666.58 in expenses. And apart from indicating that they anticipate incurring additional expenses, they have not explained why the costs they have incurred are "approximate." Thus, Plaintiff's counsel will be granted $14,356.73 in costs, to be paid from the settlement fund.

**IT IS ORDERED** that Plaintiff's Unopposed Motion and Memorandum for Approval of the Parties' FLSA Collective Action Settlement (Doc. 55) is **granted in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Award of Collective Representative Service Payments (Doc. 56) is **granted in part**.

**IT IS FURTHER ORDERED** that Defendants' Stipulated Request for a Telephonic Status Conference (Doc. 59) is **denied**.

**IT IS FURTHER ORDERED** that the Settlement Agreement (Doc. 55-1; Doc. 58-1) creating a settlement fund of $447,500.00 is **approved**, with the following particulars:

(1) **Service awards** totaling $20,000.00 are to be distributed from the settlement fund as follows:
    (a) $6,000.00 to Plaintiff Peggy Quintana;
    (b) $2,000.00 to Plaintiff Angela Dunaway;
    (c) $2,000.00 to Plaintiff D Force;
    (d) $2,000.00 to Plaintiff Karl Kurtz;

(e) $2,000.00 to Plaintiff Robyn Brooks;

(f) $2,000.00 to Plaintiff Robert Espinoza;

(g) $2,000.00 to Plaintiff Jeremy Parker; and

(h) $2,000.00 to Plaintiff Aaron Nelson.

(2) **Attorneys' Fees** are awarded in the amount of $134,250.00, to be paid from the settlement fund.

(3) **Costs** are awarded in the amount of $14,356.73, to be paid from the settlement fund.

(4) Plaintiff Peggy Quintana is appointed **Collective Action Representative**.

(5) Plaintiff's counsel, Attorneys Ryan and Bormes, are appointed **Collective Action Counsel**.

(6) Analytics LLC is appointed the **Third Party Claims Administrator** and shall administer the settlement funds as detailed in the Settlement Agreement.

(7) The Court approves the settlement payments to be made to each Collective Member who submits a timely and valid Claim Form. The Collective Members shall have 60 days after the date of mailing of the Notice and Claim Forms to submit their Claim Form and to participate in the settlement.

(8) Except as provided herein, the settling Parties are to bear their own attorneys' fees and costs.

**IT IS FURTHER ORDERED** that this action and all claims contained therein—including, without limitation, all class claims and all settled claims against Released parties, are **dismissed with prejudice**. However, this Order shall not impact the rights of any persons who do not participate in this settlement. The Clerk of Court is directed to close this case.

. . . .

. . . .

**IT IS FURTHER ORDERED** that this Court retains jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement.

Dated this 24th day of July, 2019.

_____
Honorable Rosemary Márquez
United States District Judge